IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 07-11819 |
| CINDA MALLETT WALKER, | ) | |
| | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION CONFIRMING CHAPTER 13 PLAN

This matter came before the Court for hearing on June 5, 2008 upon the Notice and Proposed Order of Confirmation (the "Plan"), filed by the above-referenced debtor (the "Debtor") on April 9, 2008; the Objection to Confirmation (the "Objection"), filed by GMAC on April 30, 2008; and the Trustee's Response to Objection to Confirmation of Plan and Recommendation for Confirmation of Plan (the "Response"), filed by the duly-appointed Chapter 13 Trustee (the "Trustee") on May 29, 2008. Stan H. Dick appeared on behalf of the Debtor, Pamela P. Keenan appeared on behalf of GMAC, and Anita Jo Kinlaw Troxler appeared in her capacity as the Trustee. After consideration of the Plan, the Objection, the Response, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court will overrule the Objection and confirm the Plan.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L), which this Court has the jurisdiction to hear and determine.

## II.  FACTS

On December 14, 2007, the Debtor filed for Chapter 13 bankruptcy relief.  On Schedule D, the Debtor listed GMAC as a partially secured creditor with a claim of $28,600.00 secured by a 2004 GMAC Envoy (the "Vehicle").  The Debtor valued the Vehicle at $14,670.00 on Schedule D.  The Plan proposes to bifurcate GMAC's claim into secured and unsecured claims.  It proposes to pay a secured claim of $15,000.00 with interest at 8%.  The Plan does not propose to pay a dividend to the holders of unsecured claims.  Therefore, GMAC's claim will be "stripped down," and GMAC will not receive any payment for its unsecured claim.

The current case is the Debtor's third bankruptcy case within two years.  On January 9, 2006, the Debtor filed her first Chapter 13 petition (the "First Case") (06-10021).  In the First Case, Schedule I showed that the Debtor had income of $1,811.77, and Schedule J showed that she had expenses of $1,392.00, leaving net income of $419.77.  The proposed plan payment was $2,400.00.  At the time of the filing of the First Case, the account with GMAC was in arrears in the amount of $2,473.94.  The proposed plan qualified GMAC's claim as a 910 claim[1] and provided for a secured claim of $32, 332.30 plus 9.25% interest.  The N.A.D.A. retail value of the Vehicle was $21,425.00.  In the First Case, the Debtor made three plan payments totaling $7,225.00.  The payments to GMAC totaled $1,316.80, including principal and interest.  The First Case was dismissed on June 26, 2002,  prior to confirmation.  The Debtor testified that the case was dismissed because she lost her job.  When the case was dismissed, the balance on

[1]A 910 claim is governed by the hanging paragraph of Section 1325(a)(9) of the Bankruptcy Code.  It is a purchase money security interest for a debt incurred during the 910 day period prior to filing for bankruptcy relief, secured by a motor vehicle purchased for the personal use of the debtor.  In re Murphy, 375 B.R. 919, 920 (Bankr. M.D. Ga. 2007).

GMAC's claim was $31,522.87.

On August 4, 2006, the Debtor filed her second Chapter 13 petition (the "Second Case") (06-10885). In the Second Case, Schedule I showed that the Debtor had income of $1,000.00, and Schedule J showed that she had expenses of $1,372.00, leaving net income of negative $372.00. At the time of the filing of the Second Case, the account with GMAC was in arrears for $6,230.86. The plan in the Second Case was confirmed on December 12, 2006, providing for a plan payment of $2,585.00. The confirmed plan qualified GMAC's claim as a 910 claim and provided for a secured claim of $31,143.82 plus 9.5% interest. The N.A.D.A. retail value of the Vehicle was $19,650.00. The Debtor made twelve plan payments totaling $30,262.50. The payments to GMAC totaled $8,139.06, including principal and interest.

Soon after the filing of the Second Case, the Debtor started a new job in radio advertising sales. After several months, her compensation changed from a base salary plus bonuses to 100% commission based on sales. On August 3, 2007, the Court entered an order with an automatic dismissal provision, allowing the Debtor to cure a plan arrearage due to missed payments. Thereafter, the Debtor's children became sick, and the Debtor, a single mom, was out of work for one week to care for them. The Debtor's income was interrupted, and she incurred medical bills. The Debtor was unable to catch up her payments and cure the plan arrearage. On November 8, 2007, the Second Case was dismissed for failure to make plan payments. The balance on GMAC's claim when the Second Case was dismissed was $25,215.35.

When the current Plan was filed, it had been 1,179 days since the Debtor purchased the Vehicle. The arrearage owed to GMAC totals $9,812.84. Schedule I shows that the Debtor has income of $3,393.00, and Schedule J shows that she has expenses of $1,234.00, leaving net

income of $2,159.00.  The Plan proposes a monthly payment of $2,150.00.  The Debtor testified

that she can support and afford the Plan because she has built a substantial book of business in

radio advertising sales, her income is stable, and her income continues to grow.  She is current

on all payments, and she has not missed any payments.  Additionally, the Debtor's fiancé now

resides with her and helps with the household expenses. The Debtor testified that she was trying

to save her home and the Vehicle by filing the current case.

GMAC argues that the Debtor's attempt to strip down GMAC's secured claim to the

current value of the Vehicle is in bad faith.  The Trustee disagrees with GMAC's objection,

asserting that the claim should not qualify as a 910 claim because the Vehicle was purchased

outside of the 910-day period.  The Trustee argues that the Plan was not filed in bad faith and

should be confirmed.

## II.  DISCUSSION

The Court must confirm a plan if it complies with the requirements of Section 1325(a) of

the Bankruptcy Code.  Section 1325(a)(3) can operate as a bar to confirmation in the absence of

good faith by the debtor.  It provides that "the court shall confirm a plan if . . . (3) the plan has

been proposed in good faith and not by any means forbidden by law."[2]

The hanging paragraph of Section 1325(a) of the Bankruptcy Code provides special

treatment for creditors with "a purchase money security interest securing debt that is the subject

of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of

the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for personal

---

[2]GMAC does not allege that the Debtor filed the case in bad faith, so Section 1325(a)(7)
is not applicable to this discussion.

use of the debtor."  11 U.S.C. § 1325(a)(9).  Such claims are commonly known as "910 claims."

GMAC was allowed a 910 claim in the First Case and the Second Case.  The current case was filed more than 910 days after the Debtor purchased the Envoy from GMAC.  GMAC argues that the Plan is proposed in bad faith because the Debtor is attempting to strip down the value of GMAC's secured claim in a third case.

**A. Standard Under Section 1325(a)(3)**

Section 1325(a)(3) requires that a debtor's plan be proposed in good faith in order for it to be confirmable.  11 U.S.C. §1325(a)(3).  "Congress has nowhere in the statute provided a definition of the term 'good faith.'  The legislative history is similarly silent on this point." Deans v. O'Donnell, 692 F.2d 968, 969 (4th Cir. 1982).  In Deans, the Fourth Circuit Court of Appeals set forth a non-exhaustive list of factors that may be considered when determining whether a debtor has proposed a plan in good faith pursuant to Section 1325(a)(3).  Deans, 692 F.2d at 972.  Noting that "a court must make its determination based on all militating factors," the Court wrote:

> Without attempting to be exhaustive or to establish a criteria 'check-list,' these factors might include, depending on the particular case, not only the percentage of proposed payment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.  Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order to fairly apply the statute as now written.

Id.  To this non-exhaustive list, the Fourth Circuit has added the debtor's prepetition conduct as a

factor that may be considered.  Neufeld v. Freeman, 794 F.2d 149, 150 (4th Cir. 1986).[3]

Ultimately, "the totality of circumstances must be examined on a case by case basis."  Deans,

692 F.2d at 972; see also Neufeld, 794 F.2d at 152.  Further, "the basic inquiry should be

whether or not under the circumstances of the case there has been an abuse of the provisions,

purpose, or spirit of [the Chapter] in the proposal or plan."  Deans, 692 F.2d at 972 (citing 9

Collier on Bankruptcy 9.20 at 319 (14th ed. 1978) (brackets in original); see also In re Chaney,

362 B.R. at 694 (same).  Finally, the "Debtor bears the burden of proving that a plan is proposed

in good faith under 11 U.S.C. § 1325(a)(3)."  In re Delbrugge, 347 B.R. at 540 (citing In re

Smith, 328 B.R. 797, 802 (Bankr. W.D. Mo. 2005); In re Virden, 279 B.R. 401, 407 (Bankr. D.

Mass. 2002)).

        At least two other courts have dealt with this issue.  In In re Murphy, 375 B.R. 919

(Bankr. M.D. Ga. 2007), the debtor filed his first chapter 13 petition within the 910-day period

of Section 1325(a).  Id. at 920.   The debtor did not know the judge to whom the debtor's case

would be assigned, so the debtor did not know if he would be able to treat the debt secured by

---

[3]The law in the Fourth Circuit on this issue remains unchanged by the enactment of the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-9, 119
Stat. 23 ("BAPCPA").  Courts addressing this particular inquiry post-BAPCPA have relied on
Deans and Neufeld.  See In re Chaney, 362 B.R. 690, 694 (Bankr. E.D. Va. 2007) ("In the
absence of a new statutory definition for the term, it appears that Congress did not intend to
depart from the judicially created standard for determining good faith.") (considering "good
faith" under Section 362(c)(3) but taking guidance from Deans); In re Edmunds, 350 B.R. 636,
649 (Bankr. D.S.C. 2006) ("Courts should not presume that amendments to the Bankruptcy Code
alter past bankruptcy practices absent a clear indication from Congress of such intent.  . . .
Therefore, the Court finds that the Deans factors are each still relevant in cases filed after the
effective date of [BAPCPA].")(internal citation omitted); In re Mark, 336 B.R. 260, 266 (Bankr.
D. Md. 2006) (court recognized the continued validity of Deans and Neufeld); In re Bateman,
341 B.R. 540, 542 (Bankr. D. Md. 2006) (citing Deans and Neufeld); In re Delbrugge, 347 B.R.
536, 540 (Bankr. N.D.W. Va. 2006) (citing Neufeld).

his vehicle as fully secured in his plan.[4]  Id.  The debtor was prevented from stripping down the vehicle claim in his plan.  Requiring the debtor to treat the claim as a 910 claim made the plan infeasible because the debtor did not have the ability to pay.  Several months after the plan was confirmed, the debtor's case was dismissed for lack of payment.  A little over a month later, the debtor filed another chapter 13 petition.  In the second case, 915 days had passed since the debtor had purchased the vehicle, so the proposed plan provided for a strip down of the vehicle claim.  The car creditor objected, asserting the debtor was not acting in good faith because the debtor allowed the last case to be dismissed so that he could take advantage of the expiration of the 910-day period.   There was no significant change in the debtor's income, expenses, or debt from the first filing.  Id. at 921.  The Murphy court found that the plan in the second case was not filed in bad faith. The court noted that there was no evidence that the debtor "played hide and seek with the car" or that the creditor attempted to repossess it.  Additionally, the first case was filed when the law was uncertain as to the treatment of 910 claims, and it was the creditor's objection in the first case that made the plan infeasible.  Id. at 923.

In In re Robinson, No. 07-41562, slip op. (Bankr. D. Kan. May 16, 2008) (2008 WL 2095349), the debtor attempted to strip down a debt owed to a car creditor in a Chapter 13 plan. Id. at *1.  However, the Debtor miscalculated the time between the purchase of the vehicle and filing of her petition and filed the petition on the 906th day after the purchase.  Id.  Realizing her mistake, the debtor failed to make any plan payments, and her case was dismissed.  Id.  The debtor filed a second chapter 13 petition fifteen days later.  Id.  There was no change in the

---

[4]The Murphy court explained that the judges in Middle District of Georgia were split as to the interpretation of Section 1325(a)'s hanging paragraph.  Id. at 921.  Whether the debtor could strip down the creditor's claim depended on the judge to whom the case was assigned.

debtor's circumstances from the first filing, but the debtor proposed to strip down the car creditor's claim. <u>Id</u>. at *2. The debtor filed a motion to extend the stay pursuant to Section 362(c)(3) but failed to mail a copy or give notice of the motion to the car creditor. <u>Id</u>. The debtor admitted that the only reason she allowed her first case to be dismissed was so that she could realize considerable savings by having the car claim stripped down in the second case. <u>Id</u>. The <u>Robinson</u> court found that the debtor did not file the plan in bad faith, stating that the "[d]ebtor's desire to wait until after the passage of the 910 day period . . . before filing her petition . . . does not show a lack of good faith."[5] <u>Id</u>. at *7.

### B. The Application of Section 1325(a)(3) to the Plan

Circumstances have changed considerably for the Debtor since the filing and dismissal of the Second Case. In the Second Case, Schedule J showed net income of negative $372.00. Schedule J in the current case shows net income of $2,159.00. The Debtor now has a steady job, her income continues to grow, and her fiancé pays for a portion of the household expenses.

The First Case and the Second Case were dismissed for reasons beyond the Debtor's control. In the First Case, the debtor lost her job. In the second case, the debtor was out of work for one week because her children were sick, causing her to lose significant income.

The Second Case continued for one year, and the Debtor made twelve plan payments. The 910-day time period expired during the Second Case. The Debtor waited a little over a month to file a new Chapter 13. The 910-day period did not expire during that month. The Court does not find that the Debtor timed her third filing so as to take advantage of the expired

---

[5] The court noted that "'the fact that the debtor is taking advantage of her legal rights is not, by itself, sufficient to support a finding of bad faith.'" <u>Robinson</u>, slip op. at *7 (quoting <u>In re Shula</u>, 280 B.R. 903, 906 (Bankr. S.D. Ala. 2001)).

910-day period. The Debtor testified that she filed because she wanted to save both her house and the Vehicle.

The facts in this case do not even rise to the level of questionable behavior exhibited in Murphy and Robinson.  In Robinson, the court explicitly found that the debtor did not file her plan in bad faith even though the debtor purposefully timed the filing of her second petition so as to take advantage of the 910-day expiration.  The Debtor in this case did not time the filing of her third case to take advantage of the expiration of the 910-day period.  In addition, the Debtor paid material sums to her plan and to GMAC in the First and Second Cases, and the Debtor's financial situation improved significantly from the Second Case to the present case.

There is no indication that the Debtor has been dishonest in representing the facts in this case.  The Debtor has carried her burden in proving that the Plan was proposed in good faith. Considering the totality of the circumstances, the Court finds that the Plan was not filed in violation of Section 1325(a)(3).

## CONCLUSION

Upon consideration of the totality of the circumstances, the Court finds that the Plan was filed in good faith pursuant to Section 1325(a)(3) of the Bankruptcy Code.  The Plan is confirmed, and the Objection is overruled.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


IN RE:                                    )
                                          )          Case No. 07-11819
CINDA MALLETT WALKER,                     )
                                          )          Chapter 13
                                          )
            Debtor.                       )



<u>PARTIES IN INTEREST</u>


Cinda Mallett Walker

Stan H. Dick, Esq.

Pamela P. Keenan, Esq.

GMAC

Michael D. West, Bankruptcy Administrator

Anita Jo Kinlaw Troxler, Trustee